(Clark County, Ohio, Probate Court.)

IN RE APPLICATION OF HOWARD SULTZBACH TO BE APPPOINTED EX'R. OF CATHERINE SULTZBACH.

1. Under sec. 5995, it is mandatory upon the Judge of the Probate Court to appoint the person named in the will of a deceased person, the will being properly probated, if he offers to give sufficient bond, if required, and he is legally competent.

2 A person not a minor, an idiot, lunatic or insane, is legally competent to receive the appointment as executor in Ohio.

3. The fact that a contest is pending to set aside a will, or that the person named in the will as executor, is opposed by a large number of the devises in the will, will not prevent the appointment.

ROCKEL, J.

On January —, 1893, the will of Catherine Sultzbach was regularly and properly probated in this office. Thereupon Howard Sultzbach, the person named in the will as executor, made application in the regular manner to be appointed as such. To his appointment six or eight of his other brothers and sisters protested, because, 1st: That he is incompetent to perform said trust. 2nd: That from his lack of capacity and business knowledge in regard to the estate of the late Catherine Sultzbach, he is unfit for said trust." Catherine Sultzbach died the owner by devise from her husband, of about 335 acres of valuable land in this county She was the mother of 13 living children. She was 77 years of age when her husband died, and 83 at her death. From the time of her husband's death until her own, she lived on the home farm with Howard, who was unmarried and her youngest son, and her two daughters, Eliabeth Sultzbach and Mrs. McLean, a widow. To these three children she gives in her will about 138 acres of the most valuable land, with the valuable improvements thereon, Howard receiving 50 acres. The remainder of the farm she wills to her remaining ten children, making it subject however to the payment of all her late husband's debts as well as her own. These debts are nearly equal to the value of the lands devised to these ten children.

All the children residing in this state but Howard, Elizabeth and Mrs. McLean, are resisting the appointment. The three residing elsewhere, do not appear to have been heard from. Some three or four of the protesting children, while not imbeciles or idiots, are certainly in a condition that it would seem that a mother who had born them from her womb, nursed them in infancy, and cared for them in childhood, would not, uninfluenced and of her own free will, have left them in want, and provided for others who are able, both mentally and physically, and financially, to take care of themselves. Such an act is not natural. Such a deed it is hard to believe comes from a mother.

But this will has been regularly proved and admitted to probate in this court; and however much I may doubt its justice, or its genuineness, so far as this proceeding is concerned, I am bound to consider it a legal instrument and presume it to be the valid last will and testament of Catherine Sultzbach. And this is true even if a contest to test its validity be now pending. Sec. 5995, provides, "When any will shall be duly proved and allowed, the Probate Court shall issue letters testamentary thereon to the executor, if any be named therein if he be legally competent; and if he shall accept the trust, and shall give bond, if bond be required, to discharge the same, otherwise, the court shall grant letters of administration upon the estate as hereinafter provided."

In considering this statute in reference to its application to the case under consideration, two questions arise.

First—If the person named is legally competent, is it mandatory upon the court to appoint him as such executor?

Second—What is meant by legally competent? It seems so far as my investigation has extended, that if the person named in the will is legally competent, the court is without discretion, and must make the appointment. In McGregor v. McGregor, 40 N. Y., C. J. Denio, says: "The selection of an executor is not committed to the Surrogate's Court. The testator is allowed to appoint such persons as he may see fit, provided they do not fall within the class of incompetent persons mentioned in the statute." Johnson, J. in the same case says: "The statute makes it the duty of the Surrogate when any will shall have been admitted to probate, to issue letters testamentary thereon. It then provides who shall be deemed incompetent to serve as executor. I am of the opinion that any person appointed or named as an executor in a will is to be deemed competent, unless he is declared incompetent by statute, and that it is the duty of the Surrogate to grant letters to every person named in a will as executor, upon his application, who is not declared incompetent by statute. He had no discretion in the matter, but must obey the requirements of the statute which is the sole source of his power."

In Berry v. Hamilton, 12 B. Mon. (Ky.) 191, the court takes the same view when it says, "It is sufficient for us to say that the law has declared who may and who may not be executor, and if

Berry be a man whom the law allows to be appointed as such, it follows that upon his motion to give bond and security and to qualify under the will, it was the duty of the court, if the security was sufficient, to permit him to give bond and be qualified as executor, and to give him letters testamentary. * * * Whatever may be the opinions of men as to the propriety or impropriety of a particular appointment, the very basis and foundation of the exercise of the right which society has granted to its members to appoint its own representative after death, is the special confidence reposed by the testator in the appointee; and men, it seems to us, would care but little for the high privilege of disposing of their own estates to their own liking if they are to be denied the right of selecting those who are to carry out and effectuate the benevolent purposes of their wills. The law has pointed out who they are, and society has long been satisfied with the wisdom of the rules upon this subject."

In Re Banquire's Estate, 26 Pac. R., 179. (Cal. Sup Ct., 1891), it is said: "Under our law, a man has the right to make such disposition of his property as he chooses, subject only to such limitation, as are expressly declared by law, and within the same limitations he has the absolute right to select the executor to carry out his will. In other words, any executor named in the will has the right to act, unless there is some express provision of the law which declares he shall not."

Likewise in Holladay v. Holladay, 19 Pac. R., 81, (Ore. Sup. Ct., 1888), it was held "That when a will is proven, it is the plain duty of the court to grant letters testamentary to the person named in the will, upon his application, who is not disqualified by statute."

In some few states the law has vested a wide discretion in the court, but in the cases above quoted from, the statute was very much like the one in Ohio, and I feel that they state the law as it should be applied here, and will therefore hold that under sec. 5995, Rev. Stat., where a will is duly proved, it is mandatory upon the court to appoint the person therein named if he is legally competent, and offers proper bond if required.

The next question is, who are excluded by reason of not being legally competent? What is meant by this expression. The statute has been in force for more than half a century, and I have been unable to find any reported decision . The legislature has said in section 6001, that a minor shall not be appointed, but that some one shall be appointed to act until he is of legal age. Sec. 6022 provides, that if an unmarried woman is an executrix and marries, this extinguishes her authority as such. These are the only two provisions throwing light upon what the legislature concludes, is a legal incompetency.

We are thus driven to the common law in the absence of statute, to ascertain what meaning should be attached to "legally competent", and who there was considered competent to act as executor. At common law, such was the respect in which the wishes of the testator were held, that in the appointment of an executor to stand in his place and settle his estate, the principle was sometimes carried to the extent of appointing persons obviously unsuitable to exercise the trust. (Schouler's Ex's., 133.)

Generally speaking, says Williams on Ex'trs., 268, all persons capable of making wills, and some others besides, are capable of being made executors, hence immorality or habitual drunkenness did not disqualify. "So that" says the court in Halladay, supra, "in the absence of statute, we find that aliens, minors, married women, criminals, immoral persons, habitual drunkards, insolvents, and other obviously unsuitable persons were not disqualified by the English law, and that the rule was, as already stated, that all persons may serve as executors except such as are expressly forbidden." * * * "The common law forbade the appointment of an idiot or lunatic, or insane person, for these disabilities render them incapable of performing the duties of such trust. but their want of understanding likewise rendered them incapable of determining whether they would accept the trust.

"These references are sufficient to show how few are disqualified to act as executors at common law, and how strictly the wishes of the testator were regarded and enforced in his appointment of a representative to manage and control his estate after his death. In fact, there seems to have been no discretion left the court in the matter; if the person named did not come within the inhibited class, the court had no right to refuse his application." It will thus be seen how few are the causes which will permit a court to use its discretion and not appoint a person named in a will, as the executor of such will.

It seems that if he is not a minor, a lunatic, or an idiot, upon tendering bond he must be appointed. It would seem to me that a married woman would likewise be entitled to the appointment, were she named in the will. It will be conceded, without reviewing the testimony offered, that Howard Sultzbach is neither a minor, a lunatic, or an idiot.

It has been sought to impress the court that the fact that the executor was antagonistic to the large majority of the legatees and that his interest was antagonistic to theirs, ought to have some bearing in the matter.

Upon this matter, In Re Banquier, su-

pra, is an important case.—The law in California provides, that "the want of understanding or integrity"is a disqualification to act as an executor. The court there having jurisdiction of such matter found that Mary C. Bode is incompetent to execute the duties of the trust of executrix of the said last will and testament of said Joseph Banquier, deceased, for want of integrity, and that the. said Mary C. Bode is antagonistic and hostile, and asserts claims adverse to the said estate, and that she wants integrity in that regard."

The Supreme Court of California (26 Pac. R. 178), upon passing upon this case, and reversing the decision of the lower court, says, that this was not a sufficient reason for refusing her the appointment.

And in reference to the weight of evidence which would justify such refusal, conclude: "We may add, while the court is authorized to refuse to appoint an executor named in the will for want of integrity, yet for manifest reasons this power should not be exercised, except upon clear and convincing evidence establishing such disqualifying fact."

Section 6017, seems to give this court a very broad discretion in the matter of removal of an executor, when, after alluding to a number of specific causes of removal, it says, "or any other cause which in the opinion of such court renders it for the best interest of the estate that such executor or administrator be removed."

But as to the appointment its power is limited within very narrow bounds.

It is not impossible but that the legislature recognized this fact when section 6019a, was enacted, and therein provided that during the contest of a will the executor would have no right to control real estate specifically devised.

The application in this case will be granted, but the executor will be required to give bond, although the will dispenses with it. And I think it proper that the costs of this application be taxed against the real estate.

Cochran & Rodgers, for Ex'r.

Mower & Mower, for Protestors.